UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEREMY LEE JAMES,, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. SA-17-CV-680-XR |
| MATILDE PAZ MARTINEZ, ET AL., | § § § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered its jurisdiction over this case and certain Defendants' motions to dismiss. The Court GRANTS the pending motions to dismiss (docket nos. 6, 8, and 11), and notifies Plaintiff that it is considering dismissal of certain other claims *sua sponte*. A district court may dismiss a claim on its own motion, as long as it provides notice of its intention and an opportunity to respond. *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014).

## BACKGROUND

Plaintiff Jeremy Lee James initially filed his Complaint on July 24, 2017, invoking this Court's diversity jurisdiction. This Court issued a show cause order, noting that Plaintiff and all Defendants were citizens of Texas for purposes of this Court's jurisdiction, that diversity jurisdiction was clearly lacking, and directing Plaintiff to show cause why the case should not be dismissed for lack of jurisdiction. In response, Plaintiff filed an Amended Complaint invoking this Court's federal question jurisdiction based on alleged violations of the United States Constitution.

1

In his Amended Complaint, Plaintiff sues twelve Defendants, including Matilde Paz Martinez, Judge Eugenie Wright, Assistant District Attorney Jennifer McDaniels, former Bexar County Sheriff Susan Pamerleau (misnamed Susan Parmeleau), Medina County Sheriff Randy Brown, Glenn Kothmann (owner, GHK Enterprises), Andi Thompson (office manager, GHK Enterprises), Elodia Pacheco, Susan Mast-Wilson, Rochelle Acevedo, Bexar County Sheriff Javier Salazar, and Andy Lumpkin. Plaintiff fails to specify which specific causes of action are asserted against which particular Defendant. Rather, the Amended Complaint sets forth the following list of statutes or constitutional provisions alleged to be at issue: "False Claims, Defamation of Character, Slander, Coersion [*sic*], Assumption of Jurisdiction, Barratry, Failure to Disclose, False Imprisonment, Violation of 2nd, 4th, 6th, 8th & 9th Amendment of Constitution of The United States of America, Breech [*sic*] of Contract."

The Amended Complaint then contains a narrative generally summarizing Plaintiff's claims as to all Defendants. Plaintiff primarily complains of Matilde Paz Martinez, who is the mother of Plaintiff's children, and is alleged to have caused all of the other incidents of which Plaintiff complains. Plaintiff complains that she refuses to let him be with his children, and that she filed for a protective order against him in early 2013. Plaintiff alleges that she called him, telling him he was never going to spend Christmas with his kids and there "were choice words for a response," after which "she hung up and called SAPD to violate my P.O." Plaintiff alleges that he tried multiple times to state his claim to Judge Eugenie Wright, as well as Bexar County ADAs Jennifer McDaniels and Johnathan Watkins, "to no avail." Plaintiff alleges that the Judge ordered him taken into custody, when "5 bailiffs began assaulting" him, to which he resisted. He alleges that he was charged with five counts of assaulting an officer and hindering court proceedings, and Judge Wright later revoked his bond after he bailed out.

He alleges that the sheriffs then came and "forced their way into [his] house detained [him], then assaulted [him] after in custody sprayed mace millimeters from eye" and then searched his house without a warrant, producing a .22 handgun and a sawed-off 16-gauge shotgun "for home protection." He alleges he was charged with felonious possession of a prohibited firearm, "a violation of our constitution and my 2nd Amendment rights." He states that his attorney/public defender Rochelle Acevedo told him he was accountable and could not seek vindication. He states that the prosecutors refused his claim of truth "and proceed[ed] with prosecutorial vindictiveness." He notes that Susan Pamerleau was the Bexar County Sheriff at the time, and the current Sheriff is Javier Salazar.

Plaintiff alleges that he then moved to Medina County at an unspecified time. He alleges he was trying to send messages to his son through his mother and she "set about to put another P.O. just to stop me from calling her." He states, "I had a friend check once I found out police were looking for me so I know it was protective order that I was summonses to so was not in court they escalated to terroristic threats and put warrant." He alleges that a neighbor in Hondo (Andy Lumpkin) made a false report about him firing a weapon towards the street. He then alleges that Medina County Sheriffs trespassed on private property to take him into custody for the warrant, then coerced his wife into letting them search her house without a warrant and seize property without compensation, then informing neighbors of his past.

He alleges that his neighbor Elodia Pacheco starting making calls, making the company selling him land (GHK Enterprises) refuse payment only to send a letter of default and evicting them "all because Elodia did not want to live next to us she made false claims throughout the neighborhood that I was a felon" and passing around a petition. Plaintiff then alleges that Susan Mast-Wilson owns two tracts of land and she entered into a contract with Plaintiff to rent to own.

3

He states he paid $1000 deposit and a half month rent, but three days after taking possession a realtor told him the contract was no good and he and his family would be thrown out.

Plaintiff then alleges that "all of these things or people are a direct result of Ms. Martinez false claims and continue[d] attempts to put me in Jail where I can not get to my children." Plaintiff asks the Court to restore his honor, expunge his felony, restore his guardianship of his children, and award damages.

## ANALYSIS

Federal courts are courts of limited jurisdiction. This Court has a duty to examine its subject matter jurisdiction, and must do so *sua sponte* when necessary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Unless a statute specifically grants this Court jurisdiction, this Court's jurisdiction is generally limited to those claims over which it has diversity jurisdiction or federal question jurisdiction.

Many of Plaintiff's claims involve state-law causes of action against private individuals and there is no diversity jurisdiction for any of these claims. However, in his Amended Complaint, Plaintiff does assert claims under the United States Constitution against certain defendants and invokes the Second, Fourth, Sixth, Eighth, and Ninth Amendments. Some of these claims invoke this Court's federal question jurisdiction.

A plaintiff may not sue directly under the Constitution. However, § 1983 provides a remedy for the violation of the United States Constitution by state actors in certain circumstances. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); 42 U.S.C.A. § 1983. Claims under this section must allege sufficient facts to show that: "(1) the conduct in question [was] committed by a person acting under the color of state law; and (2) the conduct [deprived] the plaintiff of a right secured by the Constitution or the laws of the United States." *Martin v.*

*Thomas*, 973 F.2d 449, 452–53 (5th Cir. 1992). To hold a defendant individually liable, § 1983 further requires that a plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Vicarious liability may not be used to expand the reach of a § 1983 claim. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). To hold the Sheriff liable in his official capacity (which is essentially a claim against the County), a plaintiff must generally show that (1) there is a constitutional violation; (2) there is an official policy or custom of the County; and (3) the official policy or custom was the moving force behind the constitutional violation. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012).

When the Court has original federal question jurisdiction over some claims, it may exercise supplemental jurisdiction over other claims for which original jurisdiction is lacking if those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. However, even where such supplemental jurisdiction exists, the Court may decline to exercise supplemental jurisdiction in certain circumstances.

## Claims under the United States Constitution (Section 1983)

The Court first considers the claims over which it may or does have federal question jurisdiction. As noted, Plaintiff purports to assert claims under the Second Amendment, Fourth Amendment, Sixth Amendment, Eighth Amendment, and Ninth Amendment to the United States Constitution.

**Second Amendment claims**

To the extent Plaintiff contends that his conviction for possession of a firearm violates his Second Amendment right and asks the Court to expunge his conviction, such a claim may not be brought under § 1983. Convicted persons wishing to challenge their conviction must do so through a criminal appeal or petition for writ of habeas corpus, not through civil rights actions. When a judgment in favor of the plaintiff would necessarily imply the invalidity of the criminal conviction, § 1983 is not available. *Skinner v. Switzer*, 562 U.S. 521, 533 (2011) (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Thus, because Plaintiff's Second Amendment claims would call into question his conviction for possession of a firearm, the Court lacks jurisdiction to consider Plaintiff's Second Amendment claims. Thus, the Court finds that the Second Amendment claims should be dismissed.

**Eighth Amendment claims**

To the extent Plaintiff asserts claims under the Eighth Amendment, such claims allow convicted persons to challenge cruel and unusual punishment that includes treatment and conditions of confinement. It precludes the use of excessive physical force against prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff does not complain of any conditions of confinement or treatment while incarcerated (*i.e.*, post-conviction). He complains only of alleged excessive force during his arrest, and such claims are governed by the Fourth Amendment, not the Eighth Amendment. Thus, the Court finds that the Eighth Amendment claims should be dismissed.

**Ninth Amendment claims**

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Other than

generally citing the Ninth Amendment in his list of claims, Plaintiff never specifically states what claim or right he is asserting under the Ninth Amendment that was allegedly violated. A § 1983 claim must be based on a specific constitutional guarantee. *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Thus, the Court finds that the Ninth Amendment claims should be dismissed.

**Sixth Amendment claims**

Plaintiff invokes the Sixth Amendment, which guarantees an accused in a criminal prosecution the rights to a speedy and public trial by jury, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. Plaintiff appears to allege that his appointed defense counsel in the criminal proceeding violated his Sixth Amendment rights.

Rochelle Acevedo was Plaintiff's appointed defense attorney in his criminal case. She has filed a general denial. Plaintiff filed a response to her Answer, noting that Acevedo was appointed to represent him, and quoting the Sixth Amendment. Plaintiff complains that Acevedo did not defend his constitutional rights, told him he was guilty, and is guilty of "barratry, coercion and improper influence. He seeks damages against her for the time spent in prison and on parole.

Plaintiff may not bring Sixth Amendment claims against his appointed counsel for alleged ineffective assistance of counsel under § 1983, nor may he bring claims for coercion or improper influence. First, he has not shown that Acevedo is a state actor subject to section 1983. "The mere fact that defendant [Acevedo] is an attorney who represented plaintiff does not establish that [she] was a state actor." *Guyton v. Carter*, No. 3:13-cv-221-CWR-LRA, 2013 WL

1962306 (S.D. Miss. May 10, 2013) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 319 n.9, 325 (1981); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)). The Supreme Court has expressly held that "a public defender does not act under color of state law when performing the traditional functions of counsel to a criminal defendant," and claims based on such activities are properly dismissed. *Polk Cty.*, 454 U.S. at 317, 325 & n.4.

In addition, even if Acevedo could be considered a state actor, a claim of ineffective assistance of counsel during the criminal proceeding could call into question the underlying criminal conviction, and is thus not cognizable under § 1983 unless that conviction has been invalidated through proper channels of post-conviction relief. *Guyton*, 2013 WL 1962306, at *2; *Patton v. Texas*, No. No. A-15-CA-164-LY, 2015 WL 13227998 (W.D. Tex. Nov. 20, 2015) ("Plaintiff's claims alleging . . . ineffective assistance of counsel pursuant to the Sixth Amendment are barred by *Heck v. Humphrey*.") (*citing Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994) (dismissing, under *Heck*, a § 1983 claim that defendants had conspired to convict plaintiff by providing ineffective assistance of counsel in plaintiff's criminal trial)); *see also Johnson v. McElveen*, 101 F.3d 423 (5th Cir. 1996) (holding that claims seeking equitable relief based on ineffective assistance and state trial court deficiencies must be pursued initially in habeas corpus proceedings, and claims for money damages implicate *Heck v. Humphrey* concerns).[1] Thus, the Court finds that the Sixth Amendment claims against Acevedo should be dismissed.

---

[1] In addition, these claims are barred by the applicable two-year statute of limitations. Last, Plaintiff does not plead a plausible basis for a breach-of-contract claim, but even if he has the Court would decline to exercise supplemental jurisdiction over this state-law claim.

**Claims against Judge Eugenie Wright and ADA Jennifer McDaniels**

It is not clear what constitutional amendments Plaintiffs claims were violated by Judge Eugenie Wright and ADA Jennifer McDaniels. These Defendants have not yet appeared. Prosecutors are protected by prosecutorial immunity for claims against them in their individual capacities—they are absolutely immune from liability under the federal civil rights statutes with regard to actions taken by them within the course and scope of representing the governmental agencies and subdivisions in judicial proceedings. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994). This prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process. *Boyd*, 31 F.3d at 285; *Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993). Similar, state Judge Eugenie Wright is entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of judicial functions, regardless of the alleged magnitude or nature of the acts. *Boyd*, 31 F.3d at 284. Plaintiff does not complain of any actions taken by McDaniels or Judge Wright outside of their roles as prosecutor and judge, and thus these claims should be dismissed *sua sponte* for failure to state a claim upon which relief can be granted.

**Fourth Amendment claims**

Plaintiff's Fourth Amendment claims are directed against former Bexar County Sheriff Susan Pamerleau, current Bexar County Sheriff Javier Salazar, and current Medina County Sheriff Randy Brown. Plaintiff alleges facts that could implicate the Fourth Amendment's prohibition against unlawful searches and seizures and use of excessive force. Defendant Salazar has filed a motion to dismiss (docket no. 6), which the Court now considers.

Bexar County Sheriff Javier Salazar moves for dismissal under Rule 12(b)(6) for failure to state a claim, noting that the only reference to him is that "Susan Pamerleau was the residing Sheriff at the start it [*sic*] seat is now occupied by Javier Salazar." Salazar notes that Plaintiff does not specify whether he is suing Salazar in his individual or official capacity. Salazar argues that, if Plaintiff is suing him in his individual capacity, he fails to allege any specific actions taken by Salazar that could create personal liability. The Court agrees and finds that Plaintiff fails to allege any facts that could establish a claim against Salazar in his individual capacity. In fact, Plaintiff admits that Pamerleau was Sheriff at the time of the acts complained of in 2013.

Salazar further contends that, if Plaintiff is suing him in his official capacity, he fails to allege that a deprivation of constitutional rights occurred as a result of some official policy, custom, or practice of Bexar County. Plaintiff alleges that "Javier Salazar is following the same path his predecessor took when Matilde Martinez attempted to file a second contract for protection" and he had moved and was not summoned to court but a "warrant was issued for terroristic threat to family/household." But Plaintiff does not allege that Salazar was personally involved in the warrant's issuance or that it was the result of a custom or policy of the Bexar County Sheriff's office. Accordingly, Plaintiff fails to plausibly state facts establishing a claim under § 1983 against Salazar in his official capacity.

Salazar further moves to dismiss Plaintiff's breach-of-contract claim against him, noting that taking an oath of office does not create contractual liability between the Sheriff and members of the general public. The Court agrees.

The Court GRANTS Salazar's motion to dismiss. Plaintiff fails to plead sufficient facts to state a plausible claim for relief. He fails to allege any personal involvement in the alleged constitutional violations by Salazar and fails to allege a custom or policy of the County that

caused the violation. In addition, to the extent Plaintiff argues in his response that Salazar can be liable for breach of contract for failing to protect and serve the people, that claim fails as a matter of law. A Sheriff's obligations to the people of the County do not establish a legally binding and enforceable "contract" for purposes of a state-law claim for breach of contract.

The Court next considers Plaintiff's claims against former Bexar County Sheriff Susan Pamerleau. Pamerleau was the Sheriff at the time of the 2013 incident in which Plaintiff alleges Bexar County deputies "forced their way into [his] house detained [him] then assaulted [him] after in custody sprayed mace millimeters from eye" and then searched his house without a warrant, producing a .22 handgun and a sawed-off 16-gauge shotgun "for home protection." He states that Pamerleau "allowed" the deputies to be sent, though he fails to specify whether she had knowledge of or specifically authorized the incident. He also fails to allege a custom or policy of Bexar County that would support a basis for liability. In addition, these claims are clearly barred by the applicable two-year statute of limitations. The Court finds that the claims against Pamerleau should be dismissed *sua sponte* because they fail to state a claim upon which relief should be granted.

The Court next considers Plaintiff's claims against Medina County Sheriff Randy Brown. Plaintiff alleges that a neighbor "made a false report about [him] firing a weapon towards the street in dark from 100 yards away with one eye." (This neighbor appears to be Andy Lumpkin but it is not entirely clear.) Plaintiff states that the "Sheriffs of Medina County with Randy Brown trespass[ed] on private property take me into custody for warrant then coerce my wife making her let them search her house without warrant and seize property without compensation. Then informing neighbors of my past and leave." It is unclear from the Amended Complaint

whether Plaintiff is alleging that the sheriff deputies came in response to the neighbor's report or based on the warrant that he alludes to.

Randy Brown filed an answer (docket no. 10), in which he states that Plaintiff was arrested in Medina County on a valid warrant and that he was detained in Medina County Jail, but denies any constitutional violations. Brown asserts that Plaintiff has failed to state a claim upon which relief can be granted, and invokes the doctrine of qualified immunity for any individual capacity claims.

Plaintiff filed a Response to Brown's answer, in which he clarifies that the sheriff deputies came in response to a report of gun fire, but then learned that Plaintiff had a warrant for terroristic threat. He states,

> They found out I had a warrant for Terroristic threat to family/household, another misrepresentation not Randy Brown's fault or concern. The actions of those you employ who most likely follow Randy Brown's tutelage. Randy Brown's employees first trespassed on private property after being asked by its owner to stop, then used improper influence forcing me to ID myself on private property without a crime or injured party. I was arrested without an injured party and forced to bail out. Then as I am being booked into a jail against my will, other deputies begin to threaten my wife telling her they needed to search the house and could be done the easy way or the hard way with getting a warrant and coming back. Under improper influence, she conceded to their search where they seized property belonging to her, which is theft. The Constitution states in Article V nor shall private property be taken for public use without compensation. It would appear that Randy Brown either does not have full disclosure or believes the masses do not bear enough light to challenge.[2]

Although Plaintiff states that "the Sheriffs of Medina County with Randy Brown" trespassed on his property, it appears that Brown was not in fact present at the incident. In response to Brown's assertion that he was without knowledge or information sufficient to admit or deny the allegations, Plaintiff states that "your sheriff deputies show up to CR 2471 with a report

---

[2] Plaintiff complains that his wife's guns were taken, and requests that Brown return his wife's property. However, Plaintiff may not sue for relief on his wife's behalf.

12

of alleged gun fine." He also states that Brown's employees trespassed on private property. This indicates that Brown was not present, and that Brown was not personally involved in the event. To the extent Plaintiff seeks to hold Brown vicariously liable for the actions of the sheriff's deputies, the Court has already explained that a Sheriff may not be held liable simply because he employs a deputy who allegedly violates the Constitution. Thus, the Court finds that the claim against Brown in his individual capacity should be dismissed *sua sponte* for failure to state a claim upon which relief can be granted.[3]

### State Law Claims

As noted, the Court lacks original diversity jurisdiction over the state-law claims asserted against the various private defendants in this case. The Court considers the motions to dismiss filed by certain defendants and considers whether to exercise supplemental jurisdiction over the state-law claims.

For purposes of Section 1367(a), claims are "so related" to the original claims that they form part of the same case or controversy where they "derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165–66 (1997) (internal quotation omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Claims arise from a common nucleus of operative fact when the claims "on the face of the pleadings concern the same core factual issue." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "Among the factors to be considered in deciding whether the facts of the . . . claims are so woven together that they constitute a single claim are their relatedness in time, space, origin, or motivation, and whether,

---
[3] To the extent he may be asserting a claim against the Sheriff in his official capacity, such claims are also dismissed for failure to state a claim.

taken together they form a convenient unit for trial purposes." *Fed. Ins. Co. v. C.D. Henderson Inc.*, No. A-07-CA-982-SS, 2008 WL 11334958, at *3 (W.D. Tex. Oct. 31, 2008) (quoting *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 327 (4th Cir. 2007)). Courts traditionally exercise supplemental jurisdiction over state-law claims where the claims arise from the same facts, or involve similar occurrences, witnesses or evidence. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996). Accordingly, "[t]he determination of whether it is appropriate to exercise supplemental jurisdiction demands a 'fact specific case-by-case inquiry.'" *Whatley v. Young Women's Christian Ass'n of Nw. Louisiana, Inc.*, No. CIV.A. 06-423, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006).

Even where supplemental jurisdiction exists, § 1367(c) provides a district court with discretion to decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In addition to these statutory factors, courts are also guided by the "common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

**Motion to Dismiss by Kothmann and Thompson ("GHK Defendants") (docket no. 8)**

Plaintiff names Kothman and Thompson as defendants, stating that Kothmann is the owner of GHK Enterprises and Thompson is the "office manager." Docket no. 4. The allegations never expressly mention Thompson but state that a neighbor "started making calls making the company selling us our land GHK enterprises to refuse payment only to send a letter

of defaulting [illegible] payment evicting us all because Elodia did not want to live next to us . . . ." and later state that Plaintiff is seeking to make Kothmann responsible for breach of contract.

Defendants Kothmann and Thompson move to dismiss for insufficient service, insufficient process, and failure to state a claim. The Court GRANTS the motion to dismiss based on improper service. The record indicates that Plaintiff mailed the complaint and summons himself, and such service is improper because service cannot be effected by a party. FED. R. CIV. P. 4(c)(2) ("Any person who is at least 18 years old *and not a party* may serve a summons and complaint.") (emphasis added). Accordingly, service on Kothmann and Thompson is QUASHED without leave to re-serve. Even if service had been proper, the Court lacks supplemental jurisdiction over these claims. These claims are only tangentially related, at best, to the claims over which this Court has original federal question jurisdiction, and do not fall within the Court's supplemental jurisdiction. Thus, the claims are DISMISSED FOR LACK OF JURISDICTION.

**Motion to Dismiss by Pacheco and Mast-Wilson (docket no. 11)**

Plaintiff alleges that his neighbor Elodia Pachedo made calls that caused GHK to breach its contract with Plaintiff, and "made false claims throughout neighborhood that [Plaintiff] was a felon and therefore going to Rob everybody." He alleges that Susan Mast-Wilson owns two tracts of land, one furnished with a home, and contracted with Plaintiff to rent to own. Plaintiff alleges he paid a $1000 deposit and a half months's rent, but after taking possession he was told by a realtor that his contract was not good and that he and his family would be thrown out. Plaintiff seeks to hold Mast-Wilson responsible for breach of contract.

These defendants move to dismiss the claims against them for lack of subject matter jurisdiction, arguing that the claims do not arise under federal law and that diversity jurisdiction

does not exist.  The Court agrees that it lacks original jurisdiction over these claims.  The Court further holds that it lacks supplemental jurisdiction over these claims.

Accordingly, the motion to dismiss these claims under Rule 12(b)(1) for lack of jurisdiction is GRANTED and all claims against Pacheco and Mast-Wilson are DISMISSED FOR LACK OF JURISDICTION.

**Claims against Andy Lumpkin**

Plaintiff fails to allege facts that would establish a viable cause of action against Defendant Andy Lumpkin.  He is named only once in the factual allegations as follows: "A Neighbor in Hondo made a false report about me firing a weapon towards street in dark from 100 yards away with one eye Andi Lumpkin."  Plaintiff fails to specify a cause of action against Lumpkin.  To the extent he generally asserts "false claims," there is no such cause of action under Texas law.  Further, a claim for malicious prosecution requires the commencement of a criminal prosecution against the plaintiff, and there is no indication that plaintiff was charged for firing a weapon.  *King v. Graham*, 126 S.W.3d 75 (Tex. 2003) (plaintiff must prove that a complainant has knowingly furnished false information and the false information caused a criminal prosecution).  Thus, the Court finds that the claims against Lumpkin should be dismissed *sua sponte* for failure to state a claim upon which relief can be granted.

## CONCLUSION

The Court finds that it has federal question jurisdiction over some of the claims asserted by Plaintiff under § 1983 for violations of the United States Constitution.  Having considered the pending motions to dismiss, the Court makes the following rulings:

Javier Salazar's Motion to Dismiss (docket no. 6) is GRANTED and all claims against Defendant Salazar are DISMISSED WITH PREJUDICE.

Glenn Kothmann and Andi Thompson's Motion to Dismiss (docket no. 8) is GRANTED. Service on these Defendants is QUASHED without leave to re-serve, and all claims against these Defendants are DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION.

Elodia Pacheco and Susan Mast-Wilson's Motion to Dismiss (docket no. 11) is GRANTED, and all claims against these Defendants are DISMISSED WITHOUT PREJUDICE.

Further, having considered whether to *sua sponte* dismiss certain other claims, the Court finds that the claims against Susan Pamerleau, Judge Eugenia Wright, ADA Jennifer McDaniels, Medina County Sheriff Randy Brown, Rochelle Acevedo, and Andy Lumpkin should be dismissed for failure to state a claim upon which relief should be granted. The Court further notifies Plaintiff that it intends to dismiss Plaintiff's claims under the Second, Eighth, and Ninth Amendments (which are not directed against any specified Defendant) for the reasons stated herein. Plaintiff is hereby given notice of the Court's intention to dismiss these claims and the reasons for the dismissal.

Plaintiff shall respond to the Court's notice of intent to dismiss by providing his reasons in writing, either in an Amended Complaint or in written briefing, as to why he believes the claims should not be dismissed, no later than **December 4, 2017**.[4]

It is so ORDERED.

SIGNED this 17th day of November, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff is further notified that, should all claims over which it has federal question jurisdiction be dismissed, the Court will decline to exercise supplemental jurisdiction over the state-law claims against Defendant Matilde Paz Martinez.